# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YAZMIN Q.,                           :                CIVIL ACTION
           Plaintiff               :
       v.                           :
                       :
MARTIN O'MALLEY,                     :
Commissioner of the Social          :
Security Administration,            :
           Defendant               :                NO.  24-1531

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                              October 24, 2024

       Yazmin Q. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final

decision of the Commissioner of the Social Security Administration ("the Commissioner"),

denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security

Act.  Plaintiff has filed a brief in support of her request for review, the Commissioner has

responded to it, and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request

for review is granted and the case is remanded to the Commissioner.

## I.      PROCEDURAL HISTORY[1]

       On February 4, 2022, Plaintiff applied for DIB, alleging that her disability commenced on

October 10, 2021.  R. 14.  The claim was denied, initially and upon reconsideration; therefore,

Plaintiff requested a hearing.  *Id.*  On May 3, 2023, due to COVID-19 precautions, Plaintiff

appeared for a telephonic hearing, before Marc Silverman, Administrative Law Judge ("the ALJ");

Plaintiff, represented by an attorney, and Courtney Stiles Clem, a vocational expert, ("the VE")

testified at the hearing.  *Id.*  On June 22, 2023, the ALJ, using the sequential evaluation process

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Petitioner's Reply thereto ("Reply"), and the administrative record.  ("R.").

("SEP") for disability,[2] issued an unfavorable decision.  R. 14-34.  The Social Security

Administration's Appeals Council denied Plaintiff's request for review, on February 8, 2024,

making the ALJ's findings the final determination of the Commissioner.  R. 1-3.  Plaintiff now

seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28

U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

A.    Personal History

Plaintiff, born on October 22, 1973, R. 32, was 49 years old, on the date of the ALJ's

decision.  She lives with her adult daughter.  R. 47-48.

B.    Plaintiff's Testimony

At the May 3, 2023 administrative hearing, Plaintiff testified about her limitations.  R. 46-

55, 61.  She suffers Post-Traumatic Stress Disorder symptoms including flashbacks, nightmares,

inability to sleep, and panic attacks, which occur four to five times each week.  R. 48-50.  Plaintiff's

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).

> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).

> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).

> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).

> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. § 404.1520(g).

symptoms can be triggered by noises, such as those made by a garbage truck.  R. 49.  She refuses to attend family functions, because she cannot tolerate the noise.  R. 52-53.  On the rare occasions Plaintiff leaves home – only once or twice per month – she is accompanied by her daughter or son-in-law and is hypervigilant.  R. 50-51.  Plaintiff's memory is poor; she writes herself notes and sets alarms on her phone to remind her to take her medication.  R. 53.

Plaintiff experiences more bad days than good days each week.  R. 54-55.  On a good day, she reads and sits on the porch; on a bad day, she remains in bed.  R. 54.  Plaintiff performs no household chores, leaving them all to her daughter.  R. 54-55.

C.    Vocational Testimony

The VE characterized Plaintiff's past job as "composite" and best described as delivery route driver, a medium,[3] semi-skilled[4] position and parts clerk, a heavy,[5] semi-skilled job.  R. 57. The ALJ asked the VE to consider a person having Plaintiff's age, education, work experience, limited to light[6] work, with additional limitations:  never climb ladders, ropes and scaffolds; can frequently stoop, crouch and kneel; can crawl occasionally; must avoid concentrated exposure to extreme cold, pulmonary irritants such as smoke dust, fumes and poor ventilation, unprotected heights and dangerous unguarded moving machinery; limited to no more than moderate noise as defined in the Selected Characteristics of Occupations; limited to simple tasks in a routine work

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).
[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hand or feet may be moved quickly to do repetitive tasks."  20 C.F.R. § 404.1568(b).
[5] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  20 C.F.R. § 404.1567(d).
[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

environment; limited to occasional interaction with supervisors but capable of frequent interaction during a 30-day training period; able to work in close proximity to others but unable to perform tandem job tasks requiring cooperation with others to complete the tasks; no interaction with the general public; limited to low stress work, defined as routine work with no more than occasional changes in the work.  R. 57-58.  The VE opined that, although this individual could not perform Plaintiff's past work, she could perform three unskilled[7] jobs:  (1) price marker (161,000 positions in the national economy); (2) electrical assembler (18,000 positions in the national economy); and garment sorter (126,000 positions in the national economy).  R. 58-59.  The VE indicated that, if this individual required one unscheduled absence each month, she could still perform the three unskilled jobs previously identified.  R. 59-60.  The VE further opined that employers typically tolerate no more than one unscheduled absence per month.  R. 60.

If the VE were to consider the same person as in the prior hypothetical questions but who was unable to tolerate any interaction with coworkers, all work would be precluded.  R. 60-61. The VE further opined that employers do not tolerate a worker being off task more than 15% of the workday.  R. 61.  Finally, the VE confirmed that her testimony was consistent with Dictionary of Occupational Titles, except for topics it does not cover; for those, her testimony was based upon her education, training, and work experience.  R. 61.

## III.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.    [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2026.

2.    [Plaintiff] not engaged in substantial gainful activity since October 10, 2021, the alleged onset date (20 CFR 404.1571

---

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

*et seq.*).

3.     [Plaintiff] has the following severe impairments: depression; post-traumatic stress disorder (PTSD); agoraphobia; fibromyalgia; and adhesive capsulitis, right shoulder (20 CFR 404.1520(c)).

4.     [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can never climb ladders, ropes, and scaffolds; can stoop, crouch, and kneel frequently; can crawl occasionally; must avoid concentrated exposure to extreme cold; must avoid concentrated exposure to pulmonary irritants such as smoke, dust, concentrated fumes, and poor ventilation; must avoid concentrated exposure to unprotected heights and dangerous unguarded moving machinery; limited to an environment with no more than a moderate noise level as defined in the Selected Characteristics of Occupations (SCO); limited to simple tasks in a routine work environment; no more than occasional interaction with supervisors, but would be able to have frequent interaction during a 30-day training period; can work in close proximity to others, but with only brief, incidental interaction with others and no tandem job tasks requiring cooperation with other workers to complete the task; no interaction with the general public; and limited to low stress work, which is defined as routine work with no more than occasional changes in the work.

6.     [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7.     [Plaintiff] was born on October 22, 1973, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.     [Plaintiff] has a limited education (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-

Vocational Rules as a framework supports finding that [Plaintiff] is "not disabled" whether or not [she] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform (20 CFR 404.1569 and 404.1569a).

11.    [Plaintiff] has not been under a disability, as defined in the Social Security Act, from October 21, 2021, through the date of this decision (20 CFR 404.1520(f)).

R. 16-17, 21, 31-33.

## IV.    DISCUSSION

A.    <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence

itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff could not

7

perform her past relevant work but could perform other, unskilled, light work in the national economy and, hence, was not disabled.  R. 14-34.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by:  (1) improperly evaluating the "C" criteria for Listed Impairments 12.04, 12.06 and 12.15; and (2) finding social limitations in her residual functional capacity ("RFC") that were unsupported by substantial evidence.  Pl. Br. at 2-12.  The Commissioner denies Plaintiff's assertions.  Resp. at 1-10.  This court finds that Plaintiff's arguments have merit. Accordingly, this case is remanded for the ALJ to correct the errors she committed and to render a new disability decision.

1.     <u>The ALJ Erroneously Evaluated the "C" Criteria for Listed Impairments 12.04, 12.06 and 12.15</u>

Plaintiff argues that the ALJ erred reversibly, because he failed to explain adequately why Plaintiff failed to satisfy the required "C" criteria for Listed Impairments ("LI") 12.04, 12.06 and 12.15.  This court finds that the ALJ committed reversible error.

LIs 12.04, 12.06 and 12.15 have identical "C" criteria, requiring a "serious and persistent" mental disorder; that means medical documentation establishes that the disorder has existed over a period of at least two years[8] and shows:  (1) medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that is ongoing and diminishes the signs and symptoms of the mental disorder; and (2) marginal adjustment, meaning the claimant has minimal capacity to adjust to changes in environment or demands that are not part of her daily life.  20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(C), 12.06(C), 12.15(C).

The ALJ's analysis of the "C" criteria is the following:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  The record does not reflect ongoing medical

---

[8] There is no dispute Plaintiff satisfies this requirement, because the ALJ found that Plaintiff had a four-year history of mental health treatment, including therapy and medication, before losing insurance coverage; she then resumed treatment in February 2022 and continued it.  R. 23.

> treatment, mental health therapy, psychosocial support, or a highly
> structured setting that diminishes the symptoms and sighs of the
> mental disorder and a marginal level of adjustment, that is, minimal
> capacity to adapt to changes in the environment or to demands that
> are not already part of daily life.

R. 21.  The ALJ's explanation is erroneous and fails to comply with the Third Circuit's requirement

that the ALJ provide sufficient explanation for a listing decision to allow for meaningful judicial

review.  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000).

First, the ALJ ignored his own conclusion that Plaintiff's ongoing medical treatment for

her mental health problems had provided some amelioration of her symptoms.  R. 24-26.  His

findings in this regard establish that Plaintiff satisfies the C(1) criteria.  Inexplicably, the ALJ

failed to appreciate the significance of his own finding.  Next, the ALJ completely failed to analyze

the evidence in the record that suggests Plaintiff has only a marginal level of adjustment, that is,

minimal capacity to adapt to changes in the environment or to demands that are not already part

of her daily life.  *See* Pl. Br. at 6-7 (identifying evidence in the record supporting the conclusion

that Plaintiff has a marginal level of adjustment).  Merely stating that Plaintiff cannot satisfy the

requirement, while ignoring evidence that she might, is clearly insufficient to comply with the

ALJ's duty to provide an explanation amenable to judicial review.  *Burnett*, 220 F.3d at 119-20.

It also fails to comply with the ALJ's duty to explicitly consider evidence that supports a

conclusion contrary to that reached by the ALJ.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

Upon remand, the ALJ shall properly consider all relevant evidence in the record concerning the

"C" criteria for LIs 12.04, 12.06 and 12.15.  *Burnett*, 220 F.3d at 120.

    2.    <u>The ALJ Failed to Provide Substantial Evidence to Support the Inconsistent Social
Limitations in his RFC Assessment</u>

Plaintiff maintains that the ALJ failed to provide substantial evidence to support the

inconsistent social limitations he imposed on her RFC.  In particular, she argues that the ALJ could

not justify finding that she could only tolerate occasional interaction with supervisors but could tolerate frequent interaction with supervisors during a 30-day training period.  This court agrees.

On its face, the part of the RFC that Plaintiff challenges is illogical.  To wit, how could it be that, when the Plaintiff commences a job and requires 30 days of training, she can frequently interact with strangers and yet, after the 30 days elapse, be only able to tolerate occasional interaction with those same people?  The ALJ never explains how he arrived at this facially illogical decision.  Indeed, when he explains the social limitations he imposes in the RFC assessment, based upon Plaintiff's poor mental health, he says only:  "The medical record supports restricting [Plaintiff's] interactions with others and limiting her exposure to work-related changes."  R. 28.  The ALJ's failure to explain how he arrived at the confusing social limitations he imposed constitutes reversible error, because this court cannot search through the record to find evidence that might support his facially illogical limitations.  *Fargnoli*, 247 F.3d at 44 n.7.  On remand, if the ALJ does not find that Plaintiff satisfies the "C" criteria for LI 12.04, 12.06 and 12.15, he will have to reconsider Plaintiff's RFC and explicate appropriately the RFC he renders.

An implementing order and order of judgment follow.